UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JASON DOWICYAN,                         :

                    Petitioner,    :    12 Civ. 5157 (LAK)(HBP)

     -against-                          :    REPORT AND
                                             RECOMMENDATION
DEPUTY SUPT. ROLAND LARKIN,        :

                    Respondent.    :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LEWIS A. KAPLAN, United States

District Judge,


I.   Introduction


          Petitioner Jason Dowicyan seeks, by his pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating the judgment of conviction entered against him by

the County Court for the County of Rockland, New York (Resnick,

J.) for one count of murder in the second degree in violation of

New York Penal Law § 125.25.  By that judgment, petitioner was

sentenced to an indeterminate term of imprisonment of seventeen

years to life.  Petitioner is currently incarcerated pursuant to

that judgment.

Respondent moves to dismiss the petition on the grounds that it is both untimely and procedurally barred.  For the reasons set forth below, I respectfully recommend that respondent's motion be granted and that the petition be dismissed as time-barred.

II.   Background

A.   Facts

On August 28, 2002, petitioner pled guilty to one count of murder in the second degree in violation of New York Penal Law § 125.25 (Transcript of Proceedings in the County Court, County of Rockland, Case No. 2002-44 (Docket Item 22) at 6:2-14, 9:22-14:2), and, on November 12, 2002, the County Court for the County of Rockland, New York sentenced him to an indeterminate sentence of 17 years to life (Transcript of Proceedings in the County Court, County of Rockland, Case No. 2002-44 (Docket Item 23) at 13:17-14:17).  In February 2004, petitioner was diagnosed with relapsing-remitting multiple sclerosis; petitioner claims that he has been symptomatic since 1986 (Petition for Writ of Habeas Corpus, dated May 16, 2012 (Docket Item 1) ("Pet.") Addendum at 12 ¶ 8).  Petitioner claims that he suffered from a cognitive impairment as a result of the multiple sclerosis at the time of

his plea and that his plea was, therefore, involuntary (Pet., Addendum at 7-10).

On March 1, 2005, petitioner appealed his conviction to the Appellate Division of the Supreme Court for the Second Department, claiming that (1) his plea was not knowing, intelligent and voluntary due to mental disease; (2) he did not receive the effective assistance of counsel; (3) a competency hearing should have been ordered by the trial court and (4) the sentence he received was harsh and excessive (Affirmation of Deputy Supt. Roland Larkin in Support Regarding First Motion to Dismiss, dated Jan. 28, 2013 (Docket Item 24) ("Larkin Aff.") Exs. A and I). The Appellate Division affirmed the judgment of conviction on June 20, 2005, People v. Dowicyan, 19 A.D.3d 613, 796 N.Y.S.2d 541 (2d Dep't. 2005), and, on April 10, 2006, the New York Court of Appeals denied petitioner's request for leave to appeal. People v. Dowicyan, 6 N.Y.3d 847, 849 N.E.2d 976, 816 N.Y.S.2d 753 (2006).

On November 28, 2006, petitioner moved to vacate the judgment of conviction and set aside the sentence pursuant to N.Y. Crim. Proc. Law §§ 440.10 and 440.20 asserting the same claims that he asserted on direct appeal (Larkin Aff., Ex. G at 1-2). The County Court for Rockland County denied the motion on February 16, 2007 (Larkin Aff., Ex. I at 6). On March 29, 2007,

petitioner moved for leave to appeal pursuant to N.Y. Crim. Proc. Law § 460.15 (Larkin Aff., Ex. J at 2).  The Appellate Division denied the motion on August 24, 2007 (Larkin Aff., Ex. L at 1).[1]

Petitioner claims that "any delay under the [AEDPA] should not be held against [him] due to counsels delay's [sic] in articulating and exhausting his claims" (Show Cause Resp. at 2 ¶ 3).  Petitioner also claims that attorney Steven Dratch worked on the case from around November 14, 2009 until around February 8, 2011 (Show Cause Resp. at 2 ¶ 5).[2]  Petitioner does not mention any specific failure or misrepresentation by counsel and does not claim that he specifically requested that his attorneys file specific claims.

Petitioner further claims that he was "duped by an inmate law clerk at Attica Correctional Facility into believing" that the law clerk filed a federal habeas corpus petition on

---

[1]Petitioner submitted numerous additional state court filings between April 2010 and May 2012, including three motions to vacate the judgment of conviction pursuant to Section 440.10, as well as the attendant appeals (Larkin Aff., Exs. M, P, S, U, W, Y and BB).  The New York State courts denied all such motions in full (Larkin Aff., Exs. O, R, T, X, AA and DD). For the reasons set forth at pages 7-10 of the text, the specific dates on which these applications were made and denied are immaterial.

[2]Petitioner later claims that it was "April 2010 when petitioner's family hired Franzblau & Dratch to handle the case," thus, the exact date on which Steven Dratch began representing petitioner is unclear.

petitioner's behalf, although petitioner does not disclose either the date on which the inmate law clerk made this misrepresentation or the date on which he believed the law clerk filed the petition (Show Cause Resp. at 2 ¶ 4).  On March 5, 2011, petitioner sent a letter to the Clerk of this Court, inquiring whether a habeas corpus petition had been filed on his behalf (Show Cause Resp. at 11); on March 11, 2011, the Pro Se Office informed petitioner that no petition had been filed (Show Cause Resp. at 12).  More than one year later, on May 16, 2012, petitioner filed the present petition for a writ of habeas corpus (Pet. at 6).[3]

On August 15, 2012, the Honorable Lewis A. Kaplan, United States District Judge, issued an Order directing petitioner to show cause why the petition should not be dismissed as untimely ("August 15 OSC") (Docket Item 9), and, on September 20, 2012, Judge Kaplan dismissed the petition as untimely based on

---

[3]A pro se habeas petition is deemed filed on the date the inmate delivers the petition to prison authorities for mailing. See Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts; Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (the prison "mailbox" rule extends to habeas petitions).  Accordingly, I deem Dowicyan's petition to be filed May 16, 2012 -- the date on which he signed the petition and presumably gave the petition to prison officials to be mailed (Pet. at 6).  See Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) (noting with approval that "district court in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing").

petitioner's failure to respond to the August 15 OSC (Docket Item 10).  Petitioner subsequently claimed that he had never received the August 15 OSC, and, on October 3, 2012, Judge Kaplan granted petitioner until October 24, 2012 to submit evidence and arguments explaining why the petition was timely (Docket Item 11). Petitioner made his written submission on October 22, 2012 and asserted that the petition was timely principally because he (1) made consistent efforts to litigate the case in the New York State courts and (2) was misled by an inmate law clerk into believing that a habeas corpus petition had already been filed (Show Cause Resp. at 2-3).  On January 28, 2013, respondent moved to dismiss the petition (Docket Item 19).

     B.  <u>The Petition</u>

       Petitioner claims habeas relief is warranted because: (1) petitioner did not receive the effective assistance of counsel; (2) petitioner was denied an affirmative defense under the law based on mental deficiencies related to his diagnosis with relapsing-remitting multiple sclerosis; (3) petitioner received an excessive sentence and (4) the prosecution was malicious and vindictive (Pet. at 5-6).

As noted above, respondent contends that the petition should be denied because it is both untimely and procedurally barred.

III.  <u>Analysis</u>

28 U.S.C. § 2244(d)(1), as amended by Section 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Public Law No. 104-132, provides a one-year statute of limitations for habeas petitions:

> A 1-year period of limitation shall apply to an appli-cation for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collat-eral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The AEDPA's limitations period ordinarily commences when a conviction becomes final.  28 U.S.C. § 2244(d)(1)(A).  A conviction becomes final upon the completion of direct appellate review in state court and by the United States Supreme Court, either when certiorari proceedings are completed or when the time for seeking further direct review expires.  McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003); Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001).

 The one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . . ."  28 U.S.C. § 2244(d)(2).  The effect of this statutory toll is to "exclude [the] time during which properly filed state relief applications are pending [; it] does not reset the date from which the one-year statute of limitations begins to run."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam); accord Felton v. Mazzuca, 98 Civ. 4567 (KMW)(RLE), 2002 WL 655207 at *2 (S.D.N.Y. Apr. 18, 2002) (Ellis, M.J.) (Report & Recommendation).

 The New York Court of Appeals denied petitioner leave to appeal on April 10, 2006.  Thus, his conviction became final

90 days after that date, or July 10, 2006,[4] when his time for
filing a petition for a writ of certiorari expired.  Jimenez v.
Quarterman, 555 U.S. 113, 119-20 (2009); Epps v. Poole, 687 F.3d
46, 49 (2d Cir. 2012); Dillon v. Conway, 642 F.3d 358, 360 n.3
(2d Cir. 2011); see 28 U.S.C. § 2101(d); U.S. Sup. Ct. R. 13.
Thus, in the absence of an exception or toll, petitioner's time
for filing his habeas corpus petition expired on July 10, 2007.

     Petitioner filed a Section 440.10 motion to vacate his
conviction on November 28, 2006, tolling the limitations period
as of that date, after 141 days had run.  28 U.S.C. § 2244(d)(2).
The Section 440.10 motion remained pending until August 24, 2007,
when the Appellate Division denied petitioner's application for
leave to appeal.[5]  As of August 24, 2007, petitioner had 224 days

---

[4]The actual 90th day after the New York Court of Appeals
denied leave -- July 9th -- was a Sunday in 2006.  Accordingly,
the deadline rolls over to the next business day.  Fed. R. Cr. P.
45(a)(1)(C).

[5]There is some indication in the record suggesting that the
toll resulting from petitioner's Section 440.10 motion may have
ended long before August 24, 2007.  The Trial Court denied
petitioner's 440.10 motion on February 16, 2007.  Petitioner's
application for leave to appeal from the denial of his Section
440.10 motion was due 30 days after service of the Trial Court's
Order on petitioner.  22 N.Y.C.R.R. § 670.12(b)(1).  The record
indicates that petitioner's application for leave to appeal was
not signed by petitioner until March 29, 2007 -- 41 days after
the Trial Court's decision -- and, therefore, could not have been
filed before that date (Larkin Aff., Ex. J at 2).  The record
does not indicate whether the Appellate Division denied leave to
appeal because the application was untimely or on more

(continued...)

left on the AEDPA's one year clock, or until April 4, 2008.

Petitioner did not file his petition until May 16, 2012, more

than four years after the one year limitations period expired.

It is, therefore, untimely.

In addition to the statutory toll, the AEDPA's one-year

limitations period is also subject to the doctrine of equitable

tolling.  Holland v. Florida, --- U.S. ---, 130 S. Ct. 2549, 2560

(2010); Jenkins v. Greene, 630 F.3d 298, 302 (2d Cir. 2010);

Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000); Smith v.

McGinnis, supra, 208 F.3d at 17; see also Warren v. Garvin, 219

F.3d 111, 113 (2d Cir. 2000) ("Equitable tolling is a doctrine

that permits courts to extend a statute of limitations on a

case-by-case basis to prevent inequity" and "is available when

'extraordinary circumstances' prevent a prisoner from filing a

timely habeas petition.").  As explained by the Court of Appeals

---

[5](...continued)
substantive grounds.  Given this lacuna in the record, I shall
assume that the Appellate Division found the application for
leave to appeal to be properly filed and that the AEDPA
limitations period was tolled until leave to appeal was denied.
See Jimenez v. Quarterman, supra, 555 U.S. at 119 (direct appeal
to state court filed out of time but accepted by state appellate
court resets AEDPA's finality date); Saunders v. Senkowski, 587
F.3d 543, 548 (2d Cir. 2009) (state collateral attack tolls
AEDPA's limitations period from the date it is initially filed to
until its final resolution, including the period during which any
appeals are actually pending).  No interpretation more favorable
to petitioner is possible.

for the Second Circuit, in order to invoke the doctrine of
equitable tolling, petitioner must demonstrate:  (1) that "ex-
traordinary circumstances prevented him from filing his petition
on time" and (2) "a causal relationship between the extraordinary
circumstances on which the claim for equitable tolling rests and
the lateness of his filing, a demonstration that cannot be made
if petitioner, acting with reasonable diligence, could have filed
on time notwithstanding the extraordinary circumstances."
Valverde v. Stinson, supra, 224 F.3d at 133-34 (inner quotations
and citations omitted); accord Holland v. Florida, supra, 130 S.
Ct. at 2562 ("[A] petitioner is entitled to equitable tolling
only if he shows (1) that he has been pursuing his rights dili-
gently, and (2) that some extraordinary circumstance stood in his
way and prevented timely filing." (inner quotation marks omit-
ted)); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally,
a litigant seeking equitable tolling bears the burden of estab-
lishing two elements:  (1) that he has been pursuing his rights
diligently, and (2) that some extraordinary circumstance stood in
his way."); Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir.
2005) (equitable tolling may be applied when "'extraordinary
circumstances' prevented a party from timely performing a re-
quired act, and that the party 'acted with reasonable diligence
throughout the period he [sought] to toll,'" quoting Doe v.

11

Menifee, 391 F.3d 147, 159 (2d Cir. 2004)); Torres v. Barnhart,
417 F.3d 276, 279 (2d Cir. 2005).

      For purposes of equitable tolling, the circumstance
that gives rise to the toll need not be unusual or unique to be
"extraordinary."  "The term 'extraordinary' does not refer to the
uniqueness of petitioner's circumstances, 'but rather how severe
an obstacle it is for the prisoner endeavoring to comply with
AEDPA's limitations period.'"  Bolarinwa v. Williams, 593 F.3d
226, 231-32 (2d Cir. 2010), quoting Diaz v. Kelly, 515 F.3d 149,
154 (2d Cir. 2008); accord Sumpter v. Sears, 09 Civ. 689 (KAM),
2011 WL 31188 at *3 (E.D.N.Y. Jan. 5, 2011); Herring v. Superin-
tendent, 09 Civ. 7610 (BSJ)(JCF), 2010 WL 5463869 at *4 (S.D.N.Y.
Dec. 2, 2010) (Report & Recommendation) (Francis, M.J.), adopted,
2010 WL 5396081 (S.D.N.Y. Dec. 29, 2010) (Jones, D.J.).  The
party asserting an equitable toll bears the burden of establish-
ing that such a toll is appropriate.  Pace v. DiGuglielmo, supra,
544 U.S. at 418; Rios v. Mazzuca, 78 F. App'x 742, 745 (2d Cir.
2003); Victorial v. Burge, 477 F. Supp. 2d 652, 654 (S.D.N.Y.
2007) (Marrero, D.J.); Evans v. Senkowski, 105 F. Supp. 2d 97,
100 (E.D.N.Y. 2000).

      Petitioner claims that the AEDPA limitations period
should be tolled because of his counsel's "delays in articulating
and exhausting his claims" (Show Cause Resp. at 2 ¶ 3).  However,

a petitioner's "garden variety claim of excusable neglect, such
as a simple miscalculation that leads a lawyer to miss a filing
deadline, does not warrant equitable tolling." Holland v.
Florida, supra, 130 S. Ct. at 2564 (internal quotation marks and
citations omitted). If such mistakes entitled habeas petitioners
to an equitable toll then the court would need to "equitably toll
limitations periods for every person whose attorney missed a
deadline," and limitations periods would be unenforceable. See
Lawrence v. Florida, 549 U.S. 327, 336 (2007). Accordingly,
petitioner's attorney's delay in filing a habeas corpus petition
does not constitute an exceptional circumstance and does not
justify an equitable toll.

Without further elaboration, petitioner also claims
that a law clerk "duped" him into believing that the clerk had
filed a federal habeas corpus petition on his behalf (Show Cause
Resp. at 2 ¶ 4). However, this is also not an extraordinary
circumstance that prevented petitioner from filing the petition
before the expiration of the AEDPA limitation period. Although
there may be instances where an attorney's abandonment of a
client constitutes an extraordinary circumstance, see Morton v.
Ercole, 08 Civ. 252 (RJS)(FM), 2010 WL 890036 at *4 (S.D.N.Y.
Mar. 10, 2010) (Sullivan, D.J.), quoting Seitzinger v. Reading
Hosp. & Med. Ctr., 165 F.3d 236, 237-38 (3d Cir. 1999) ("An

13

'extraordinary circumstance' may suffice for equitable tolling purposes if there is a 'sufficient claim of attorney abandonment' where 'a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively represented to her that he had."), petitioner did not present evidence that he diligently attempted to confirm timely filing of his petition or that he was affirmatively misled, nor is it readily apparent that a law clerk's failure to assist a pro se petitioner constitutes an extraordinary circumstance for purposes of equitable tolling.

Moreover, assuming, without deciding, that an inmate law clerk's misrepresentation concerning the status of a habeas corpus petition could constitute an exceptional circumstance, see generally Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011) (extraordinary circumstance found where the petitioner's counsel affirmatively and knowingly misled petitioner that he would file the habeas petition before the filing deadline); Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) (extraordinary circumstance existed where attorney failed to file habeas peti- tion despite specific instructions from petitioner), petitioner has failed to demonstrate how the alleged misrepresentation caused the petition to be untimely.  Petitioner never states when he first solicited the help of the unidentified law clerk, when

14

the law clerk was supposed to have filed the petition or when the law clerk allegedly misrepresented the status of the petition. If petitioner's interaction with the law clerk commenced only after the limitations period expired, the law clerk's alleged misconduct cannot give rise to an equitable toll because there would have been no limitations period left to toll.

Finally, even if the alleged misrepresentation by the law clerk is an exceptional circumstance sufficient to give rise to an equitable toll and even if that toll arose prior to the expiration of the limitation period, petitioner cannot show that he acted with due diligence after he learned that the petition had not in fact been filed.  Petitioner was advised by the Pro Se Office on March 11, 2011 that no habeas corpus petition had been filed on his behalf.  Yet petitioner still did not file his petition until May 16, 2012 -- more than a year later. This 14-month delay establishes that petitioner failed to act with reasonable diligence after the circumstance giving rise to the toll ceased to exist.  See, e.g., Celaj v. Artuz, 49 F. App'x 331, 333 (2d Cir. 2002) (summary order) (no reasonable diligence where petitioner waited four years before filing habeas peti-tion); Warren v. Garvin, 219 F.3d 111, 113-14 (2d Cir. 2000) (petitioner did not act with reasonable diligence when he waited one year and eight months between dismissal of first petition and

15

filing of second petition); Morton v. Ercole, supra, 2010 WL
890036 at *2 ("Courts generally have found that periods of delay
lasting for more than a year do not exhibit due diligence"
(citing cases)); Lewis v. Walsh, 03 Civ. 1932 (DC), 2003 WL
21729840 at *3 (S.D.N.Y. July 25, 2003) (Chin, then D.J., now
Cir. J.) (five year delay with sporadic letters to request
documents was not reasonable diligence); Tineo v. United States,
01 Civ. 4511 (HB), 97 Cr. 313 (HB), 2002 WL 1997901 at *2
(S.D.N.Y. Aug. 29, 2002) (Baer, D.J.) (duly diligent person would
not have needed more than three years to discover that his
attorney had failed to file a direct appeal); see also Lopez v.
Lee, 11 Civ. 2706 (JG), 2011 WL 6068119 at *6 (E.D.N.Y. Dec. 7,
2011) ("As year after year passed by, Lopez should not have
simply sat by hoping that his attorneys would seek federal habeas
relief on his behalf.  He should have eventually determined that
he could not rely on them and promptly found a new attorney or,
if he could not afford one, prepared a habeas petition pro se.");
Francis v. Miller, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) ("The
mere fact that counsel declined to continue to represent peti-
tioner does not justify petitioner's inaction for almost three
years.").  These lengthy periods of inaction, both while peti-
tioner believed that the petition was filed and following actual
notice of the filing error, reflect a lack of reasonable dili-

16

gence and are fatal to any possibility of an equitable toll even if I were to conclude that the misunderstanding constituted an extraordinary circumstance.  Accordingly, equitable tolling is not warranted because petitioner did not exercise reasonable diligence in pursuing his rights.

Although petitioner has not raised it, I have also considered mea sponte the possibility that petitioner's multiple sclerosis created mental deficiencies that constitute an exceptional circumstance sufficient to give rise to an equitable toll. While mental illnesses can constitute extraordinary circumstances, a petitioner's "conclusory and vague claim, without a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights, is manifestly insufficient to justify any further inquiry into tolling."  Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).  See also Barbosa v. United States, 2002 WL 869553 at *2 (S.D.N.Y. May 3, 2002) (Keenan, D.J.) ("A petitioner's allegations of illness must be supported by evidence and not based merely on the petitioner's own conclusions."); Rhodes v. Senkowski, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) (Buchwald, D.J) (adopting Report & Recommendation of Peck, M.J.) ("A petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling.  A

petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period.").

While petitioner has provided non-trivial evidence that he suffers from multiple sclerosis and has alleged that it reduced his mental capacity, he has not satisfied the burden of proof to show that these deficiencies prevented him from timely filing his habeas corpus petition.  Furthermore, petitioner's participation in the appeals process and in filing state collateral attacks based upon claims similar to those asserted here, both during the initial one-year period and during the period following his receipt of actual notice that his petition had not been filed as of 2011, demonstrate that petitioner was capable of pursuing his rights in a timely manner.  See, e.g., Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (denying equitable tolling of the AEDPA limitations period where petitioner's claims were "similar to those raised in his direct appeal and motion for state post-conviction relief, thereby undercutting his argument that lack of access caused his delay"); Atkins v. Harris, No. C 98-3188, 1999 WL 13719 at *2 (N.D. Cal. Jan. 7, 1999) (concluding that equitable tolling is inappropriate "where petitioner . . . managed to file numerous state and federal petitions which contain claims that are the same as, or similar to, the ones

18

raised in the present petition"); United States ex rel. Lacey v. Gilmore, No. 97 C 3528, 1998 WL 397842 at *3 (N.D. Ill. July 13, 1998) ("The fact that the claims [petitioner] raises on habeas are virtually identical to the claims he raised during State direct and post-conviction review undercut his claim" for tolling of limitations period).

In light of my conclusion that the petition is time-barred, I need not address whether the petition is procedurally barred.

IV.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respect-fully recommend that respondent's motion be granted and that the petition be dismissed as time-barred.

In addition, because petitioner has not made a substan-tial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005) (<u>per</u> <u>curiam</u>)

(internal quotation marks omitted); see also Love v. McCray, 413
F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set
forth above, I conclude that there would be no difference of
opinion among reasonable jurists that the petition is untimely.

       I further recommend that certification pursuant to 28
U.S.C. § 1915(a)(3) not be issued because any appeal from this
Report and Recommendation, or any Order entered thereon, would
not be taken in good faith.  See Coppedge v. United States, 369
U.S. 438, 444-45 (1962).

V.   Objections

       Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Lewis A. Kaplan, United States District Judge, 500 Pearl Street,
Room 2240, New York, New York 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Kaplan.  FAILURE TO OBJECT WITHIN
FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL**

PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155

(1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir.

1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054

(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).


Dated:  New York, New York
        June 20, 2013




                              Respectfully submitted,



                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Jason Dowicyan
DIN 02-A-6401
Eastern Correctional Facility
30 Institution Road
Box 338
Napanoch, New York 12458-0338

Carrie A. Ciganek, Esq.
District Attorney of Rockland County
County Office Building
1 S. Main St., Suite 500
New City, New York 10956




                              21